UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL FROZEN FOODS CORPORATION, A WASHINGTON CORPORATION,, <br><br> Plaintiff, <br><br> v. <br><br> BERKLEY ASSURANCE COMPANY, an Iowa Corporation, <br><br> Defendant. | Case No. C17-339RSM <br><br> ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY WITHHELD BY AMWINS |

This matter comes before the Court on Plaintiff National Frozen Foods Corporation ("NFF")'s Motion to Compel Discovery Withheld by AmWINS. Dkt. #108. NFF moves to compel Defendants AmWINS Brokerage of Arizona, AmWINS Brokerage of Illinois, and AmWINS Group, LLC (collectively referred to as "AmWINS") to produce emails identified in twenty-four entries of a privilege log as being protected by work product and attorney client privilege. AmWINS opposes this Motion. Dkt. #112.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If requested discovery is not answered, the requesting party may move for an order compelling such discovery. Fed. R. Civ. P. 37(a)(1). The party that resists discovery has the burden to show why the discovery request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

"Practicing attorneys recognize the importance of the [attorney-client] privilege and the safe harbor that it provides to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice.'" *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)). The parallel work-product doctrine shelters the mental processes of attorneys, recognizing that without "a certain degree of privacy . . . [i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial," thus demoralizing the legal profession and poorly serving the interests of clients and the cause of justice. *MKB Constructors v. Am. Zurich Ins., Co.*, Case No. C13-0611JLR, 2014 U.S. Dist. LEXIS 78883, *7-8, 2014 WL 2526901 (W.D. Wash. May 27, 2014) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). The work product doctrine is a qualified protection limiting discovery of "documents and tangible things" prepared by a party or his or her representative in anticipation of litigation or trial. *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989); *see Upjohn*, 449 U.S. at 397-402; *see* Fed. R. Civ. P. 26(b)(3). A party can obtain discovery of work product only on a

showing of "substantial need" and an inability to obtain equivalent information from other sources. Fed. R. Civ. P. 26(b)(3)(A)(ii).

The background facts of this case have previously been set forth by this Court in its Order on September 12, 2018, and are incorporated by reference here. *See* Dkt. #105.

The emails at issue were drafted by AmWINS employees after its legal department began a process of collecting internal information in anticipation of litigation. This process began in October 2016. Based on the record before it, the Court finds that it was reasonable for AmWINS to anticipate that litigation would follow, even at that early date. *See* Dkt. #113 (Mims Declaration) at ¶¶ 2-4.

The emails fall into two categories: emails where one party is an attorney, and emails between non-attorneys. AmWINS's Privilege Log consists of seventy-one "Entry Numbers." Dkt. #109 at 17–30. Entry Numbers 1-25 claim "Work Product; Attorney-Client Privilege." However, entry Numbers 1-12, 15-16, 18-19, and 25 were neither authored nor received by an attorney.[1] *Id*. The remaining Entry Numbers at issue (13-14, 17, and 20-23) include AmWINS's in-house counsel.[2] *Id*.

The Court finds that AmWINS has met its burden of demonstrating that the work product privilege applies for all of these emails. The parties seem to agree about the nature of these emails, if not their content. They were created by attorneys and other representatives of AmWINS at the behest of AmWINS in-house counsel. As corporate defendants, AmWINS can only act by and through its employees or representatives. Here, the first category of emails

---

[1] AmWINS's description for documents in which no attorney is involved is, generally, (1) "email … regarding investigation into and search for documents related to NFF's 2016 placement. Performed per instructions provided by AmWINS' legal department," or (2) "email … regarding NFF's claim. Performed per instructions provided by AmWINS legal department." Dkt. #109 at 17–25 (Entry Nos. 1-12, 15-16, 18).

[2] The description provided for documents in which AmWINS's in-house counsel is involved is, generally, (1) "emails and attachments regarding investigation into and search for documents related to NFF's 2016 placement," and (2) "regarding discussion of NFF account and claim." Dkt. #109 at 17–25 (Entry Nos. 13-14, 17, 20-23).

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY WITHHELD BY AMWINS - 3

were between AMWINS brokers and IT personnel, dealt with the searching for and reviewing of documents related to the policy and claim anticipated to be at issue in future litigation, and were not created in the ordinary course of business. *See* Mims Decl. at ¶¶ 4–6. This type of communication, where the party's employees are discussing gathering materials at the behest of an attorney, is privileged under the work product doctrine even if an attorney is not included in the communication. *See Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1084, 2009 U.S. Dist. LEXIS 124189, *17* (C.D. Cal. 2009) (citing, *inter alia*, *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 2001 U.S. Dist. LEXIS 23785, 2001 WL 1180694, *2 (D. Mass. 2001). NFF argues that gathering of this information was within the ordinary course of business, citing the deposition of Robert Balogh. *See* Dkt. #121 (citing Dkt. #109). NFF interprets his statements too broadly; gathering policy files may be ordinary in some circumstances and related to litigation in others, depending on the knowledge and intentions of the individuals who ordered that the documents be gathered. Whether or not the materials in question contain opinion or factual work product, NFF has not met its burden under Rule 26(b)(3) to show "substantial need" for these materials. NFF has not demonstrated that the requested information is an essential element of this case, instead these emails appear to include employees' commentary on the search for underlying materials that are essential to this case.

The second category of emails is similar but involves in-house counsel providing legal counsel related to the gathering of these materials. All of the same analysis applies, and it is likely that the attorney-client privilege would apply as well. Given the conclusion that these materials are privileged, the Court will deny this Motion.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff NFF'S Motion to Compel Discovery Withheld by AmWINS, Dkt. #108, is DENIED.

DATED this 27 day of November, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE